IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2020

**PATRICK BUMPUS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 17-CR-243, 18-CR-06, 18-CR-07    R. Lee Moore, Jr., Judge**

_____

**No. W2019-01082-CCA-R3-PC**

_____

The Petitioner, Patrick Bumpus, appeals the denial of his motion to withdraw his guilty pleas and his petition for post-conviction relief. He asserts various allegations of ineffective assistance of counsel, challenges the knowing and voluntary nature of his pleas, and alleges that the State "breached the contract of [his] involuntary plea[s.]" After review, we affirm the judgments of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Patrick Bumpus, Hartsville, Tennessee, pro se, (on appeal), and Noel H. Riley, II, Dyersburg, Tennessee, (at hearing), for the appellant, Patrick Bumpus.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On August 14, 2017, the Petitioner was indicted for aggravated assault by strangulation in case number 17-CR-243. On February 12, 2018, the Petitioner was indicted in case number 18-CR-06 for aggravated burglary, aggravated domestic assault, and coercion of a witness. Also on February 12, 2018, the Petitioner was indicted in case number 18-CR-07 for aggravated domestic assault and two counts of aggravated assault.

On May 8, 2018, the Petitioner entered a guilty plea in all three indictments. In case number 17-CR-243, the Petitioner pled guilty to the reduced charge of domestic assault in exchange for a sentence of 11 months and 29 days on probation. The Petitioner pled guilty as charged in case numbers 18-CR-06 and 18-CR-07 and received concurrent three-year sentences of confinement for each charge in each case. The effective sentences in each of the three cases were ordered to be served consecutively to each other for a total effective sentence of six years, 11 months, and 29 days, with six years to be served in the Department of Correction.

Less than a week after pleading guilty, the Petitioner filed a "Motion to Appeal Best Interest Plea Agreement," which the trial court denied, stating that "[a]ny appeal of this judgment must be directed to the Court of Criminal Appeals." State v. Patrick Bumpus, No. W2018-01034-CCA-R3-CD, 2019 WL 1896562, at *1 (Tenn. Crim. App. Apr. 29, 2019). About three weeks later, on June 4, 2018, the Petitioner filed a "Motion to Withdraw Plea Agreement" in the trial court in which he raised the same claims as his prior motion, while simultaneously filing a notice of appeal from the denial of the first motion. Id. at *1 n.1. Two days later, the trial court denied the motion to withdraw the plea agreement without a hearing. Id. at *1. On appeal, this court, noting the "extreme similarity between the two motions," viewed the appeal as a challenge to the denial of a motion to withdraw guilty plea and considered both of the trial court's orders. Id. at *1 n.1. The State conceded that the trial court erred by summarily denying the motion, and this court remanded the matter for a hearing. Id. at *2-3.

While his appeal was pending, the Petitioner filed a petition for post-conviction relief from conviction or sentence. In the petition, he alleged multiple claims of ineffective assistance of counsel, but relevant to this appeal claimed that counsel was ineffective for failing to file pretrial motions. An amended petition was filed by appointed counsel, specifying that the Petitioner believed that counsel should have filed a motion to suppress and also raising a new claim that counsel "failed to request an independent expert in the matter of ballistics[.]" The State responded that "[a]ll of the appropriate and relevant motions in this case were filed by [counsel]. If [counsel] did not file a requested motion, it was because it was irrelevant or harmful to the Petitioner's cases."

The post-conviction court conducted an evidentiary hearing on May 13, 2019. At the onset of the hearing, the transcript of the guilty plea hearing was entered as an exhibit but was not included in the record on appeal. We attempt to constrain our recitation of the proof at the evidentiary hearing to that relevant to this appeal.

The Petitioner first testified on his own behalf. With regard to his guilty pleas, the Petitioner said that he did not understand what portion of his sentence would be served in

confinement or understand what the term "time served" meant. He said that he "didn't know what to do" and "was trusting [his] lawyer."

The Petitioner said that he thought counsel should have filed a motion to suppress Facebook messages that "came from the phone that was found in [his] console[]" because he "never . . . received a search warrant" regarding the messages. He felt that counsel had "overlooked" the issue and "really just blew [him] off."

The Petitioner also claimed that counsel should have hired an expert witness because there "was allegedly a bullet found at the scene, but it didn't match [his] fingerprints and the police . . . didn't even conduct a powder residue test." Asked what he expected a ballistics expert to find, the Petitioner just said "it's always good to have an expert witness" and claimed that "an expert witness will prove my innocence." He later elaborated that an "independent expert could have contradicted the State's account o[f] evidence[.]" However, he acknowledged that the State might not have even been entitled to "introduce a cartridge that they found some place close to where [the incident] could have happened" without any foundation connecting it to the case.

The Petitioner's trial counsel testified with regard to the Petitioner's claim that he should have filed a motion to suppress Facebook messages taken off his phone that it was not definite that the Facebook messages in question were obtained from the Petitioner's phone. In fact, it appeared that the messages were actually obtained from the phone of one of the victims. Additionally, counsel thought that the messages were helpful and he would have wanted to use them as part of the defense proof had the case gone to trial. He said, "no matter which way you cut it, I want this stuff . . . to be in" at trial. Counsel elaborated that the messages would help the defense "say it didn't happen and we know why and the way is because she's lying. She'll do whatever it takes to put him in jail. This is a lovers' quarrel where she's just going to lie to put him in jail."

Although the Petitioner did not mention it during his testimony, counsel testified that the Petitioner asked him for "a complete copy of the jury pool list[,]" but counsel "did not feel that that was appropriate to give to [the Petitioner]" because it contained the jurors' addresses, telephone numbers, and other personal information. Counsel said that he and the Petitioner "would have talked about jurors and things of that nature[,]" and the Petitioner would have helped him pick the jury had the matter gone to trial, but counsel did not think the jurors' full identifying information should be disclosed to the Petitioner.

With regard to the Petitioner's allegation that he should have obtained an expert witness, counsel said, "I don't believe an expert witness would have been helpful in any way." He elaborated that it was "a fairly straight forward [sic] case. You know, it is she says one thing, he says another[,]" and "[a]n expert wouldn't add or subtract anything to

that." He reiterated that "even if I had unlimited money I don't know what an expert would have done in most of these cases. . . . that's just the reality of it."

As to the Petitioner's guilty plea, counsel testified that he went back and forth with the State to reach a deal that did not include jail time on the first offense as the Petitioner requested. Counsel recalled that he and the Petitioner reviewed the plea form and discussed what the Petitioner's sentences were going to be and how they were structured. Counsel said that he fully believed the Petitioner wanted to accept the plea or he would not have let the Petitioner go forward. Counsel stated that "[t]here was no question" the Petitioner understood the sentences he received under the plea.

Counsel acknowledged that he told the Petitioner that his appearance, including his facial tattoos, could have an impact on the jury when the Petitioner asked him "what are the things . . . the jurors are going to look at?" However, counsel maintained that "[a]t the end of the day, . . . it's always [the Petitioner's] decision to make a plea of guilty or not guilty. . . . I can't make him plea. I tell them that over and over and over." Counsel said that he was "absolutely" willing to go to trial on the Petitioner's cases but that the Petitioner wanted to plead guilty.

The post-conviction court entered an order denying post-conviction relief. In the order, the court also denied the remanded motion to withdraw guilty plea and indicated that a hearing had taken place on that matter on April 16, 2019. With regard to the denial of post-conviction relief, the court found that the Petitioner did not have standing to seek suppression of the information that he thought should have been suppressed and also that counsel's strategy was to use the information to the Petitioner's benefit if the case went to trial. The court ruled that counsel's performance was within the range of competence demanded of attorneys in criminal cases and that there was no proof of prejudice so as to deprive the Petitioner of a fair trial. The court observed that the Petitioner "has had trouble with every attorney who has tried to represent him."

## ANALYSIS

On appeal, the Petitioner asserts that he received ineffective assistance of counsel because counsel failed to file a pretrial motion to suppress, did not provide him with a copy of the jury list, did not investigate the jury list for "faulty backgrounds," coerced him into pleading guilty, and did not obtain an expert witness. The Petitioner also asserts that his guilty pleas were not knowingly and voluntarily entered, and that the "prosecutor breached the contract of [his] involuntary plea[.]"

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of

Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

The Petitioner first claims that counsel rendered ineffective assistance by failing to file a pretrial motion to suppress Facebook messages obtained from his phone. However, counsel testified that it was not clear that the Facebook messages were obtained from the Petitioner's phone. In fact, it appeared that the messages were actually obtained from the phone of one of the victims. Counsel additionally testified that he viewed the messages as helpful and would have wanted to use them as part of the defense proof had the case gone to trial to establish witness bias and show that the charged offenses were lies stemming from a "lovers' quarrel." The post-conviction court found that the Petitioner had failed to prove that counsel performed deficiently or that any deficiency caused the Petitioner prejudice. The record supports this determination.

The Petitioner claims that counsel rendered ineffective assistance by failing to provide him with a copy of the jury list and investigate the jury list for "faulty backgrounds." Initially, we observe that the Petitioner has waived these claims because he did not raise them in his petition or at the evidentiary hearing, and they were not ruled upon by the post-conviction court. "As a general rule, this court will not address post-conviction issues that were not raised in the petition or addressed in the trial court." Brown v. State, 928 S.W.2d 453, 457 (Tenn. Crim. App. 1996). The only mention of these issues came from counsel at the evidentiary hearing when he volunteered that the Petitioner asked him for "a complete copy of the jury pool list[,]" but he "did not feel that that was appropriate to give to [the Petitioner]" because it contained the jurors' addresses, telephone numbers, and other personal information. The post-conviction court noted counsel's brief testimony but did not make any findings with regard to the jury pool list. Waiver notwithstanding, the Petitioner has failed to demonstrate prejudice as he has not even claimed, much less proven, that he would not have pled guilty and insisted on going to trial had counsel shown him the jury pool list or investigated the people on it.

The Petitioner claims that counsel rendered ineffective assistance by coercing him into pleading guilty. However, counsel testified at the hearing that he went back and forth with the State to reach a deal that did not include jail time on the first offense as the Petitioner requested. Counsel said that he fully believed the Petitioner wanted to accept the plea or he would not have let the Petitioner go forward. Counsel recalled that he and the Petitioner reviewed the plea form and discussed what the Petitioner's sentences were going to be and how they were structured. Counsel stated that "[t]here was no question" the Petitioner understood the sentences he received under the plea. Counsel recalled that he repeatedly informed the Petitioner that it was his decision alone whether to plead guilty or go to trial and counsel was "absolutely" willing to go to trial, but the Petitioner wanted to plead guilty. The post-conviction court implicitly accredited this testimony, and the evidence does not preponderate against the post-conviction court's findings.

The Petitioner claims that counsel rendered ineffective assistance "for failing to at least at the (minimum) try to obtain expert services[] in [his] favor[.]" (Jan. 14 brief pg. 18) As to this issue, counsel testified that it was "a fairly straight forward case," and "I don't believe an expert witness would have been helpful in any way." He elaborated that the case was a "she says one thing, he says another" situation, and "[a]n expert wouldn't add or subtract anything to that." Counsel reiterated that "even if I had unlimited money I don't know what an expert would have done in most of these cases. . . . that's just the reality of it." From this testimony, implicitly accredited by the post-conviction court, it is clear that counsel made the strategic choice not to pursue obtaining a futile expert witness. Moreover, the Petitioner failed to call an expert witness at the evidentiary hearing to prove how such expert would have supported his defense and has therefore failed to establish prejudice. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The Petitioner claims that his guilty pleas were not knowingly and voluntarily entered. However, the Petitioner has waived any challenge to his guilty pleas for failing to ensure that the transcript from the plea hearing was included in the record on appeal. The record reflects that a separate hearing was held to specifically address this claim and the transcript from that hearing was made an exhibit to the post-conviction hearing, but it was not included in the record on appeal.[1]

Waiver notwithstanding, the testimony at the post-conviction hearing addressed the Petitioner's pleas, the Petitioner's post-conviction counsel noted at the hearing that the issues in the Petitioner's motion to withdraw his guilty plea also pertained to his post-

---

[1] In a reply brief, the Petitioner avers that the court clerk has verified that all transcripts and exhibits have been properly filed, yet these documents are not contained in the appellate record. In any event, as discussed below, we are nevertheless able to reach this issue.

conviction petition, and the post-conviction court's order indicated that "all of [the Petitioner's] allegations that formed the basis for withdrawing the plea involved claims of ineffective assistance of counsel." Therefore, from the record before us we are nonetheless able to conclude that the Petitioner's pleas were knowingly and voluntarily entered, supporting the post-conviction court's conclusion that "[t]here is no basis for allowing the [Petitioner] to withdraw his plea."

The Petitioner finally claims that the "prosecutor breached the contract of [his] involuntary plea[,]" apparently by including the fact that he choked the victim in the factual basis supporting one of the offenses to which he pled guilty. The Petitioner, however, did not include this issue in his post-conviction petition or raise it at the evidentiary hearing; thus, the post-conviction court made no ruling on the matter for this court to review. Issues not included in a post-conviction petition may not be raised for the first time on appeal and are waived. See Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."); Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived.")

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the post-conviction court.

_____
ALAN E. GLENN, JUDGE